(Summit County Court of Common Pleas.)

LUTHERIA S. DYAS, Executrix of the Last Will of ISAAC J. DYAS, deceased,
v. MICHAEL O'NEIL, Surviving Partner of ISAAC J. DYAS,
of the firm of O'NEIL & DYAS.

A firm took a loan from a life insurance company and gave as security a mortgage·
on their store-building, the two partners at the same time insuring their lives,
each for the sum of $10,000, for the benefit of the other, and assigned the policy
to the insurance company for collateral security for the loan. On the death of
one of the partners the insurance company paid the amount of the policy on his life
to the surviving partner, for whose benefit the same was taken out. Thereupon the
executrix under the will of the deceased partner brought · suit for the benefit of
the estate of the deceased partner against the surviving co-partner to recover the
amount of the policy so paid to him.

Held, it appearing from the testimony and the papers in the case that each of the
partners had his life insured for the benefit of his co-partner in consideration
that each co-partner did the same for the other, and that it was clearly the in-
tention of those men that in case of death of one of them the insurance should
be paid to the other, that such intention should govern the court in determining
the rights of the parties.

(Decided April Term, 1894.)

NYE, J.

This action is brought by Lutheria S. Dyas, executrix of the last will
of Isaac J. Dyas, deceased, against Michael O'Neil, surviving partner of
Isaac J. Dyas, of the firm of O'Neil & Dyas, to recover the sum of ten
thousand dollars received by said Michael O'Neil upon a policy of insur-
ance issued by The Penn Mutual Life Insurance Company of Philadel-
phia, upon the life of said Isaac J. Dyas, and payable by its terms to the
said Michael O'Neil, partner in business with Isaac J. Dyas.

By agreement of the parties, a jury was waived, and the cause sub-
mitted to the court.

In the latter of the year 1890, the said Michael O'Neil and Isaac J.
Dyas, being partners doing business in the city of Akron under the firm
name and style of O'Neil & Dyas, borrowed from The Penn Mutual Life
Insurance Company of Philadelphia, Pa., the sum of thirty thousand dol-
lars, and to secure the same, gave a mortgage upon the store building
upon the west side of Main street in the city of Akron.

At or about the time of making said loan, the members of said firm
procured an insurance upon the life of each partner, in the sum of ten
thousand dollars in said insurance company. The insurance upon the
life of Michael O'Neil by its terms was payable to his partner as such,
Isaac J. Dyas; the insurance upon the life of Isaac J. Dyas was payable by
its terms to Michael O'Neil. Each partner paid the premium upon the
policy on his own life. Both of these policies were assigned to The Penn
Mutual Life Insurance Company, as collateral security for the loan of
said thirty thousand dollars.

On the 3rd day of January, 1892, Isaac J. Dyas died. After his
death, such porceedings were had under and by virtue of the statutes of
Ohio, in the probate court, that Michael O'Neil, the survivor of said firm,
took the assets of said firm, secured the payment of the liabilities of said
firm, and paid to the plaintiff, as executrix of the last will and testament
of Isaac J. Dyas, deceased, the interest of said deceased partner in the
assets of said firm, after paying and securing said debts. In the estimate
of the assets of said firm, no account was taken of the policy of insur-
ance upon the life of Isaac J. Dyas.

Afterwards, Michael O'Neil received from The Penn Mutual Life In-

surance Company a re-assignment to him of said poilcy of insurance upon the life of Isaac J. Dyas, and afterwards collected and received ten thousand dollars upon said policy.

This action was originally brought to recover from said Michael O'Neil five thousand dollars, the one-half of the amount paid upon said policy, but by an amendment to said petition, which the plaintiff asked leave to make, the plaintiff asks to recover the whole of said ten thousand dollars from said defendant, Michael O'Neil.

By a careful reading of the petition, it seems to me that the pleader intended to base his action upon the theory that the transaction between O'Neil and Dyas, in procuring the insurance upon their respective lives, was a partnership transaction, and that whatever was received upon the policy of insurance in question, would be partnership assets. But whatever view I may have of the pleader's intention, will not vary my decision, for my decision will be based upon the real transaction, as I view it.

On the trial of this case, the plaintiff claims, that Michael O'Neil had no insurable interest in the life of Isaac J. Dyas, and that therefore the policy issued to O'Neil on the life of Dyas, was a gambling contract and therefore against public policy, and illegal.

The plaintiff further claims that the parties having procured an insurance upon the life of Isaac J. Dyas, and Isaac J. Dyas having died, that the proceeds of the policy belong to the estate of said Dyas.

The plaintiff further claims that in no event would Michael O'Neil be entitled to the proceeds of the policy upon the life of Isaac J. Dyas, but she claims that the proceeds of said policy, in whatever form it was, rightfully belongs to the Dyas estate.

On the other hand, the defendant claims, that said policy having been issued by The Penn Mutual Life Insurance Company, upon the life of Isaac J. Dyas, payable to Michael O'Neil as partner in business, was by its terms, due to him. And he further claims that it was the intention of the parties to said transaction, that the proceeds of said policy should belong to the said O'Neil.

A large number of authorities have been cited upon the question as to whether one partner in business generally has an insurable interest in the life of his co-partner.

Counsel upon both sides of this case have by their briefs and oral arguments, shown a great deal of research of authorities upon this question.

Counsel for the plaintiff claim, that an insurance by one partner upon the life of another, is against public policy, as being a gambling contract, unless under peculiar circumstances, where the partner whose life is insured, is the debtor of the one for whose life he is insured.

Counsel for the defendant claim, that any partner—or partners generally—has an insurable interest in his co-partner.

I have spent much time in examining many of the authorities cited by counsel upon both sides of this case, and I have given the case an unusual amount of thought and attention. I have finally come to the conclusion that this case must depend, not so much upon the question as to whether one of the partners had an insurable interest in the life of the other, as upon the real transaction and intention of the parties.

If this were an action by Michael O'Neil, to recover the amount due upon the policy in controversy, from The Penn Mutual Life Insurance Company, such case would of necessity depend upon whether Michael O'Neil had an insurable interest in the life of his partner, Isaac J. Dyas, and I would be compelled to pass upon that question. But the view that I take of this case, does not require me to pass upon the question as to

whether Michael O'Neil did in fact have an insurable interest in the life of Isaac J. Dyas.

The insurance company having voluntarily paid this money on the policy in question, I am of the opinion that this case must be decided upon the real intention of the two parties, O'Neil and Dyas.

The proof in this case shows that O'Neil paid the premium upon his life, and that Dyas paid the premium upon his life.  Or, perhaps, to state it more accurately, the proof shows that the premium paid upon the life of O'Neil was charged to him upon the books of the firm of O'Neil & Dyas, and that the premium paid upon the life of Dyas, was charged to him upon the books of said firm.  The annual premium paid upon the life of Isaac J. Dyas was $332.  The annual premium paid upon the life of Michael O'Neil was $319.50.

The fact that each partner paid, or allowed to be charged up to him the premium on his own life, instead of having it charged up to, or paid by the firm, would be a slight indication, at least, to show that the transaction was not intended to be a partnership transaction.

It would have been perfectly competent and legal, for each one of these partners to have had his own life insured for the benefit of himself or his estate, or his family, if that had been his intention.  Instead of that, each of these partners did in fact get his life insured for the benefit of his co-partner, or the policy upon his life made payable to his co-partner.

And from all the testimony and papers in this case, I am of the opinion, that each of these partners procured his own life to be insured for the benefit of his co-partner, in consideration that his co-partner would have his life insured for him.

I am further of the opinion, that it was the intention of these men, that if one of them died, the insurance upon his life, should be payable to and be the property of the other.

If it had been the intention of Isaac J. Dyas, when he procured an insurance upon his life, to have that insurance payable, in case of his death, to his estate, or family, I believe, from the proof in this case, that he would have had the policy so written.  I am further of the opinion that if at the time of the making of said policies, Michael O'Neil had intended to have the insurance upon his life payable to his estate or family, he would have had the policy upon his life so wirtten.  And I have been unable to find anything in the testimony or in the papers in this case to lead me to a different conclusion.

It is claimed in the petition and in argument, that the loaning of the thirty thousand dollars to the firm of O'Neil & Dyas, was upon the condition that each of said partners would procure an insurance upon his life, and assign said policy to said insurance company as collateral security for said loan.  While said policies were in fact assigned to said insurance company as collateral security for said loan, I have been unable to discover anything in the testimony that warrants me in finding that the procuring of said policies and their assignment to said insurance company was a condition for the making of said loan.

But if it be true that the procuring of said policies and their assignment to said insurance company was a part of the agreement to make said loan, I am unable to see how that fact would conflict with the holding that I have made.

But if the loan was made upon the condition that each member of said firm would procure a policy upon his own life and assign the same to said insurance company as collateral security for the payment of said loan, such an arrangement could have been carried out by having the policy upon each partner's life payable in such a way that it would have

gone to his family or estate, as well as to have made it payable to his partner.

When the real intention of parties to a transaction can be ascertained and determined, I think that intention should govern in the determination of their rights. It is the policy and duty of courts to carry out and enforce contracts made between parties, and not to make contracts for them.

I believe that the money received upon the policy in controversy, has been paid to the person to whom the parties to said transaction intended it should be paid, and with that view of the case, I will leave it where it is.

Judgment will therefore be entered for the defendant.

Grant & Sieber, for plaintiff.

Baird & Voris, for defendant.